519 A.2d 779

Bernard F. GOLDBERG, Sr.

v.

STATE of Maryland.

No. 503, Sept. Term, 1986.

Court of Special Appeals of Maryland.

Jan. 13, 1987.

Lewis S. Nippard, Ellicott City, for appellant.

Ronald M. Levitan, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, William R. Hymes, State's Atty. for Howard County, Gerald Ruter and Bernard Penner, Asst. State's Attys. for Howard County, Ellicott City, on the brief), for appellee.

Argued before GARRITY, BLOOM and WENNER, JJ.

BLOOM, Judge.

At a non-jury trial before Judge Martin A. Wolff in the Circuit Court for Howard County, appellant, Bernard F. Goldberg, was convicted of several counts of fraudulent misappropriation and one count of statutory theft. He received a sentence of seven years, with all but two years suspended in favor of five years probation, and he was ordered to make restitution.

Appellant's sole contention on this appeal is that Judge Wolff erred in denying his motion to quash the indictment against him. That contention is supported by three arguments, the single thrust of which is that the appearance of two unauthorized persons before the grand jury while it was conducting the inquiry leading to the indictment invalidated the indictment. William Hymes, the State's Attorney for Howard County, had appointed the Deputy State Prosecutor and an Assistant State Prosecutor as "Special Assistant State's Attorneys for Howard County" in order that

they could appear before the grand jury and prosecute Mr. Goldberg. Appellant argues (1) that the State's Attorney lacked authority to appoint special assistants without prior approval by the court; (2) that the offices of Assistant (or Special Assistant) State's Attorney, Deputy State Prosecutor, and Assistant State Prosecutor are all offices for profit within the meaning of Article 35 of the Maryland Declaration of Rights, which prohibits any person from holding two offices for profit at the same time; and (3) that the Deputy and Assistant State Prosecutors could not lawfully accept appointments as Special Assistant State's Attorneys.

We disagree with appellant's arguments and, therefore, reject his contention that the indictment was invalid. Accordingly, we will affirm the judgments against him.

### *Facts*

William Hymes, the State's Attorney for Howard County, requested assistance from the office of the State Prosecutor in investigating certain alleged criminal activities of appellant. Stephen Montanarelli, the State Prosecutor, assigned his deputy, Gerald R. Ruter, and one of his assistants, Bernard A. Penner, to the investigation. Subsequently, after the investigation yielded evidence sufficient to justify prosecution, Hymes appointed Ruter and Penner as Special Assistant State's Attorneys for Howard County, in order that they might present evidence before the grand jury, obtain an indictment, and prosecute appellant. Mr. Montanarelli approved the appointments.

Ruter and Penner were administered the oath of office of Special Assistant State's Attorney by the Clerk of the Circuit Court for Howard County. The State's Attorney did not obtain any prior written or oral authorization of these appointments from the court, nor was there any subsequent ratification of the appointments of Ruter and Penner by the court. Neither the County Executive nor the County Council of Howard County gave Hymes any specific authority to appoint, name or designate Ruter and Penner as Special Assistant State's Attorneys.

Ruter and Penner, purporting to act solely in their capacities as Special Assistant State's Attorneys, appeared before the grand jury and presented to it evidence that resulted in the multi-count indictment against appellant. There is no contention that Ruter and Penner participated in the actual deliberations of the grand jury. Although the indictment was signed by the State's Attorney, neither Hymes nor his deputy nor any of his regular full time assistants participated in the presentation to the grand jury.

Except for the periods of time they were actually appearing before the grand jury or engaged in the prosecution of the case against appellant (when they were purportedly acting as Special Assistant State's Attorneys for Howard County), Ruter and Penner continued to act and regard themselves as Deputy and Assistant State Prosecutor. They received no compensation whatsoever from the State's Attorney's Office for the duties performed while acting in their capacity as Special Assistant State's Attorneys; instead, throughout their participation in this matter, Ruter and Penner received their usual compensation as employees of the office of the State Prosecutor. The State Prosecutor made no effort to seek reimbursement from the State's Attorney's Office for the services performed by Ruter and Penner during the course of their participation in the investigation and trial of appellant.

At the hearing on appellant's motion to dismiss, Hymes proffered several reasons for requesting the assistance of the State Prosecutor's Office in this matter. At the time investigation into appellant's allegedly criminal activities was begun, appellant was employed as the Public Defender of Howard County. Hymes testified that he was reluctant to become involved in the matter in that there might be at least an appearance of a conflict of interest because the Public Defender and State's Attorney's staffs had contact on a daily basis and because Goldberg had represented Hymes many years previously in a civil matter. Hymes also testified that he initially thought that the State Prosecutor might have jurisdiction over the investigatory phase

in that there was a possibility the alleged offenses were multi-jurisdictional in nature. Dwight Thompson, Deputy State's Attorney for Howard County, testified that it became apparent at a later date that the bulk of the alleged criminal activity took place in Howard County. Thompson additionally proffered that the State's Attorney's Office hoped to minimize the damage to appellant's reputation by having persons outside the regularly paid staff of the State's Attorney investigate appellant's purported criminal activity.

## I

■ It is well-established that an indictment is ineffective whenever persons who are not legally authorized to appear before the grand jury have been present during the inquiry leading up to the indictment. *Coblentz v. State,* 164 Md. 558, 568, 166 A. 45 (1933). *See also State v. Ensor & Compton,* 277 Md. 529, 533, 356 A.2d 259 (1976). This is so even where there has been no allegation of injury, and no corrupt or unlawful means have been employed. *Coblentz, supra,* 164 Md. at 568, 166 A. 45.

■ If one is authorized to appear before the grand jury in any single capacity, however, the fact that he is unauthorized to appear in another or different capacity will not serve to invalidate the indictment. *Ensor & Compton, supra,* 277 Md. at 538, 356 A.2d 259.

In the case at hand, the State has not contended on appeal,[1] nor could it,[2] that Ruter and Penner were autho-

---

**1.** The State concedes in its brief that "in this case [Ruter and Penner] were not acting as State Prosecutors, they were sworn in specifically as Special Assistant State's Attorneys to investigate and prosecute this case."

**2.** Art. 10, § 33B (1981 Repl.Vol.) prescribes the duties and powers of the State Prosecutor. There being no contention that the offenses under investigation involved any of the crimes enumerated in subsection (b), (violations of State election laws, the State Public Ethics Law, bribery laws, extortion, perjury, obstruction of justice, or malfeasance, misfeasance or nonfeasance in office), subsection (c) provides

rized to attend the grand jury in their capacities as Deputy State Prosecutor and Assistant State Prosecutor. Thus, the validity of the indictment turns on whether Ruter and Penner were properly before the grand jury in their capacities as Special Assistant State's Attorneys.

Appellant's first contention is that the State's Attorney does not have the power, solely on his own authority, to appoint Special Assistant State's Attorneys to prosecute an action, so that the appearance of Ruter and Penner before the grand jury was unauthorized.

An examination of the role of the State's Attorney under Maryland law, we believe, compels a contrary conclusion.

The State's Attorney is a constitutional officer. Md. Const. Art. V, § 7. *Murphy v. Yates,* 276 Md. 475, 488, 348 A.2d 837 (1975). Article V, Section 9 of the Maryland Constitution, as amended in 1976,[3] provides in part that

---

the only possible basis for the State Prosecutor's jurisdiction over this matter. It states, in part, that "At the request... of a State's Attorney, the State Prosecutor may *investigate* criminal activity... which is conducted or committed in more than one political subdivision of the State." (Emphasis added.) The State Prosecutor may have had the authority to conduct the initial investigation in this matter based on a belief that the offenses committed by appellant were multi-jurisdictional in nature. However, neither he nor his assistant had the authority to go before the grand jury, that is, to commence prosecution of appellant. Subsection (e) authorizes the State Prosecutor to prosecute an alleged criminal violation under subsection (c) only where the State's Attorney has failed within 45 days after receipt of the State Prosecutor's findings to file charges and commence prosecution in accordance with the State Prosecutor's recommendations. That was not the case here. Rather, the record below indicates that Ruter and Penner were appointed Special Assistant State's Attorneys after it was determined that the alleged offenses were committed primarily in Howard County and an apparent conflict of interest was perceived by the State's Attorney.

**3.** Prior to its amendment in 1976, Md. Const. Art. V, § 9 provided that "The State's Attorney shall perform such duties and receive such salary as shall be prescribed by law...." The 1976 amendment was approved in the wake of *Murphy v. Yates,* 276 Md. 475, 348 A.2d 837 (1975), in which the Court of Appeals held that the State Prosecutor Act, art. 10, §§ 33A–33F of the Md. Ann. Code, unconstitutionally infringed upon the discretionary power of the State's Attorney to

"The State's Attorney shall perform such duties and receive such salary as shall be prescribed by the General Assembly." Article 10, section 34 of the Md. Ann. Code (1981 Repl.Vol.) implements these constitutional provisions. *State v. Aquilla*, 18 Md.App. 487, 493, 309 A.2d 44 (1973). It provides that "The State's attorney for each county and the City of Baltimore shall ... prosecute and defend, on the part of the State, all cases in which the State may be interested subject to the provisions of § 33B [Duties of the State Prosecutor] of this article." The Court of Appeals has held that this is the only statute which "purports to delimit the authority of the State's Attorney...." *Food Fair Stores, Inc. v. Joy*, 283 Md. 205, 213, 389 A.2d 874 (1978). Under the current constitutional scheme,[4] the office

---

prosecute and defend cases. The Court concluded from a historical review of the office of the State's Attorney that the State's Attorney had inherited the common law prosecutorial powers, duties, and broad discretionary authority of the Attorney General. The "duties" which were "prescribed by law" under then Art. V, § 9 referred solely to the constitutional grant to the State's Attorney of the common law powers which had historically devolved upon the State's Attorney. The Court rejected contentions that Art. V, § 9 authorized a divestiture of those powers and duties, noting that the draftsmen intended only to permit the Legislature to set the salary of the State's Attorney from time to time. In view of the constitutional stature of the office of State's Attorney, the Court held that the Legislature could not limit or modify the State's Attorney's powers or duties by transferring them to the office of the State Prosecutor. The State Prosecutor Act was reinstated on ratification of the 1976 Amendment to Art. V, § 9 of the Constitution.

4. The Court of Appeals in *Murphy, supra*, note 3, overruled prior decisions to the extent they implied that since the office of State's Attorney was unknown at common law, the State's Attorney was possessed of no other powers than those prescribed by the constitution and statutes, 276 Md. at 488, 348 A.2d 837 (discussing *State v. Hunter*, 10 Md.App. 300, 270 A.2d 343 (1970), *cert. denied*, 263 Md. 17, 278 A.2d 608 (1971); *Kilgour v. The Evening Star Newspaper Co.*, 96 Md. 16, 53 A. 716 (1902); *Hawkins v. State*, 81 Md. 306, 32 A. 278 (1895)). The likely effect of the 1976 amendment to Art. V, § 9 was to make valid, once again, the proposition that the duties and powers of the State's Attorney derive solely from the constitution and legislative enactments. *See Survey of Maryland Court of Appeals Decisions 1975–1976, State Prosecutor Act Held Unconstitutional*, 38 Md.L.Rev. 81, 96 (1977) (if the powers of the State's Attorney are to be "pre-

of State's Attorney is "possessed of no other powers that those prescribed by the constitutions [sic] and statutes of the State." *Aquilla, supra,* 18 Md.App. at 493, 309 A.2d 44; *Hawkins v. State,* 81 Md. 306, 310, 32 A. 278 (1895); *Kilgour v. The Evening Star Newspaper Co.,* 96 Md. 16, 29, 53 A. 716 (1902). Those powers, however, are nowhere defined or enunciated. *Aquilla, supra,* 18 Md.App. at 493, 309 A.2d 44; *Wells v. Price,* 183 Md. 443, 446, 37 A.2d 888 (1944). The courts have held, nevertheless, that the State's Attorney is vested with the broadest official discretion to institute and prosecute criminal causes. *Food Fair, supra,* 283 Md. at 213, 389 A.2d 874; *Ewell v. State,* 207 Md. 288, 296, 114 A.2d 66 (1955); *Brack v. Wells,* 184 Md. 86, 90, 40 A.2d 319 (1944); *Aquilla, supra,* 18 Md.App. at 493, 309 A.2d 44.

■ To fulfill his constitutional and statutory mandate, a State's Attorney may generally assign to his deputies and assistants the duties required of him by law, subject to his discretion and control. *Aquilla, supra,* 18 Md.App. at 494, 309 A.2d 44; *Matter of Anderson,* 20 Md.App. 31, 49, 315 A.2d 540 (1974). And such deputies and assistants may, at the assignment of the State's Attorney, attend the grand jury. *Aquilla, supra,* 18 Md.App. at 494, 309 A.2d 44.

In *Aquilla,* we noted that under art. 10, sec. 40, the General Assembly had explicitly granted to the deputies and/or assistants of State's Attorneys in certain counties the same legal powers of the State's Attorney to represent the State before grand juries. We found the failure of the Legislature explicitly to grant this power to deputies or assistants of State's Attorneys in other counties did not mean they could not attend the grand jury. Rather, we held such authority was implicit in the mandate of art. 10, sec. 34 that the State's Attorney "prosecute and defend" all

---

scribed by the General Assembly," literal reading of phrase would indicate State's Attorney no longer has any common law powers).

cases in which the State may be interested. 18 Md.App. at 494, 495, 309 A.2d 44.

It has similarly been established that Special Assistant State's Attorneys who have been properly appointed and enjoy a status sufficiently comparable to that of Assistant State's Attorney may attend the grand jury. *Id.* at 495–96, 309 A.2d 44.[5]

■ We shall hold in this case that the authority of a State's Attorney to appoint Special Assistant State's Attorneys is implicit in the statutory mandate of article 10, section 34.

The fact that the General Assembly, by art. 10, section 40, has been explicit in granting certain State's Attorneys the authority to appoint temporary or Special Assistant State's Attorneys,[6] but has not done so in other cases does not mean the State's Attorneys of other counties are not similarly empowered. By analogy to the holding in *Aquilla*, we conclude that the Legislature has merely given explicit recognition under some subsections of art. 10, section 40 to a power already implicit under art. 10, section 34. This does not mean, however, that there are no limitations whatsoever in the State's Attorney's ability to appoint special assistants. Article 10, section 40 establishes certain limitations on the appointment of deputies and assistants by

---

**5.** This is true irrespective of whether the special assistants received compensation, spent full time in their duties and were not answerable to the State's Attorney for the time spent on matters not assigned by the State's Attorney. *Id.* at 496, 309 A.2d 44.

**6.** Article 10, § 40(c)(7) provides that the State's Attorney for Anne Arundel County "may from time to time, if considered necessary, with the approval of the administrative judge of the Circuit Court for Anne Arundel County, appoint a temporary assistant State's Attorney for a particular case or series of cases...." Subsection 40(w)(7) provides that the State's Attorney for Wicomico County "with the prior approval of the resident judge ... and the Wicomico County Council, may appoint additional special assistant State's Attorneys he considers necessary, to serve for a particular case or series of cases, upon salaries, terms and conditions to be set and approved by the Wicomico County Council."

the State's Attorneys of the various counties. The number of deputies or assistants the State's Attorney may appoint, their salaries and, in some instances, the method of appointment vary from county to county.[7]

The provisions applicable to this case are contained in subsection 40(n)(3), which states, in part, that the State's Attorney for Howard County "may appoint such Assistant State's Attorneys as may be authorized by the county executive and whose salaries shall be set by the county executive with the approval of the County Council."

We do not view this provision as being the source of the State's Attorney's power to appoint assistants, regular or special; as we have said, that power stems from art. 10, section 34. Rather, subsection (n)(3) imposes a budgetary limitation on the authority of the State's Attorney. He may appoint only as many assistants as are authorized by the County Executive and at the salaries set by the County Executive with the approval of the County Council. This conclusion is buttressed by the fact section 40 is entitled "Salaries and expense allowances of county State's Attorneys." *See also Aquilla, supra,* 18 Md.App. at 494–95 n. 8, 309 A.2d 44 (legislation providing for the *number* and *salary* of State's Attorneys' deputies and assistants in the various counties was enacted as need for them was demonstrated to Legislature's satisfaction).

It is conceded by the State that the Howard County Executive gave no specific authorization for the appointment of Ruter and Penner. Nevertheless, we do not read subsection 40(n)(3) as mandating the County Executive's prior approval of the particular individuals selected by the State's Attorney to serve as his assistants. We will not infer any intention on the part of the General Assembly to vest the County Executive with a power to veto the individ-

---

7. Similar provisions with respect to Baltimore City appear in Art. V, § 9 of the Md. Const.

uals selected by the State's Attorney to act as his assistants.

■ Since Ruter and Penner received no compensation from the State's Attorney's office, their appointments obviously could not have exceeded any budgetary limitations. Nor is there anything in the record to indicate that the appointments exceeded any numerical authorization. The budgets submitted by the State's Attorney and approved by the County Executive and Council specified the number of full time employees, including Assistant State's Attorneys of varying categories, and the total sum of money payable in salaries, but made no mention of "Special" (or part-time) Assistant State's Attorneys. There was a specific line in the budget for "Contractual Services" which, according to the evidence, was frequently used to compensate not only accountants and other experts hired on a case-by-case basis when specialized assistance was needed but also Special Assistant State's Attorneys engaged on a part-time basis to prosecute individual cases where the State's Attorney believed that prosecution by a member of his regular staff would be inappropriate or inadvisable. The fact that the County Executive had never objected to that use of the "Contractual Services" funds we construe as tacit approval of the practice. By expressly approving the State's Attorney's budget provision for "Contractual Services" and tacitly approving the use of such funds to hire special assistants as the need arose, the County Executive had authorized the appointment of an unlimited number of Special Assistant State's Attorneys with restriction only as to costs.

■ Appellant argues that a Special Assistant State's Attorney is a "Special Prosecutor" and can only be appointed in certain specified ways. For that proposition, he relies on *Lykins v. State*, 288 Md. 71, 86, 415 A.2d 1113 (1980), wherein the Court of Appeals held:

> The appointment of a special prosecutor may be accomplished in one of three ways. (1) The trial court may invoke the powers vested in it under ... § 2–102(a) [of

the] Courts and Judicial Proceedings Article and designate some attorney as assistant counsel for the State. (2) As was done in *State v. Ensor and Compton* [citation omitted] the Attorney General may be requested to designate one of his assistants to be appointed by the trial court as assistant counsel for the State. (3) The State's Attorney may request the Governor to require the Attorney General under Constitution Article V, § 3 to aid the State's Attorney in prosecuting the action.[8]

Appellant's reliance on *Lykins* is misplaced for several reasons. First, the above-quoted language was pure *dicta.* In *Lykins,* the lower court had dismissed an indictment on the ground that the State's Attorney appearing before the grand jury had represented the accused in a civil matter at a time she was cohabitating with the victim of the alleged crimes. 288 Md. at 71, 415 A.2d 1113. The Court of Appeals held that in the absence of indications that the prosecution was brought for improper motives, the remedy was not to bar the prosecution, but to supplant the prosecutor. *Id.* at 85, 415 A.2d 1113. In this context, the Court went on to suggest several methods which might be employed to supplant a State's Attorney where the facts were "sufficiently grave" to merit replacement. *Id.* at 85–86, 415 A.2d 1113.

In *Young v. State,* 52 Md.App. 550, 553–54, 450 A.2d 1323 (1982), *aff'd* 297 Md. 286, 465 A.2d 1149 (1983), we referred to the *Lykins dicta* in support of our conclusion that the entire staff of a county State's Attorney's office is not disqualified from prosecuting a criminal case where one member of the staff, prior to his appointment as Assistant

---

8. Sec. 2–102(a) provides in part that "If advisable in a specific proceeding, a court may appoint ... assistant counsel for the State ... and may require his presence in court." Md. Const. Art. V, § 3(a)(3) provides that the Attorney General shall "when required by the General Assembly by law or joint resolution, or by the Governor, aid any State's Attorney or other authorized prosecuting officer in investigating, commencing and prosecuting any criminal suit or action ... brought by the State in any court of this State."

State's Attorney, had represented the defendant in the case. We stated:

> Should we adopt [such a] *per se* rule ... considerable difficulties could arise in the prosecution of any case in which a former defense counsel has later joined the prosecutorial staff.... In every such situation, either assistant counsel for the State would have to be appointed under § 2–102(a) ... or one of the other alternatives noted in *Lykins v. State* (citation omitted) would have to be invoked. Even greater difficulties could arise in connection with the institution of criminal proceedings since assistant counsel for the State does not have the power to institute them.

Neither *Lykins* nor *Young* purport in any fashion to delineate or define the power of the State's Attorney to appoint Special Assistant State's Attorneys. Both only peripherally touched the question of what *might* be done in a *post-indictment* situation to replace a State's Attorney. They did not deal with the validity of a pre-indictment appointment by the State's Attorney of Special Assistant State's Attorneys to avoid any appearance of impropriety.[9]

Furthermore, appellant's reliance on *Lykins* is based upon the erroneous conclusion that an "assistant counsel for the State" appointed by the court and a Special Assistant State's Attorney appointed by the State's Attorney are equivalent offices. A Special Assistant State's Attorney is imbued with all the powers of a State's Attorney and may institute criminal proceedings, either by way of indictment or information. He is a member of the State's Attorney's staff, subject to the State's Attorney's control, and receives any compensation to which he is entitled from the State's Attorney. A Special Prosecutor in the form of assistant counsel for the State, however, is not a member of the

---

**9.** Appellant has never alleged that he was prosecuted for improper motives or that the appearance of the particular Assistant State's Attorneys presented any conflict of interest such that their replacement was warranted.

State's Attorney's staff and operates independently of it. The court, not the State's Attorney, determines the amount of compensation to which assistant counsel is entitled. § 2–102(b), Courts & Judicial Proceedings (1984 Repl.Vol.). Where a member of the Attorney General's staff is authorized to act as a Special Prosecutor at the direction of the Governor or General Assembly, pursuant to Art. V, § 3 of the Maryland Constitution, such prosecutor remains a member of the Attorney General's staff and is subject to the Attorney General's control.

An assistant counsel for the State appointed by the court under § 2–102(a) of the Courts & Judicial Proceedings Article cannot be imbued with all the powers of a State's Attorney. In *Babbitt v. State,* 294 Md. 134, 448 A.2d 930 (1982), the Court held that section 2–102(a) of the Courts & Judicial Proceedings Article did not empower the court to appoint assistant counsel for the State to initiate prosecution by filing a criminal information. *Id.* at 140, 448 A.2d 930. This was so notwithstanding the fact that the State's Attorney had requested the appointment of assistant counsel to avoid the appearance of a conflict of interest. *Id.* at 135, 448 A.2d 930. The Court reasoned that the constitutional prerogative of the State's Attorney to determine who, when and whether to prosecute would be undermined if the court could confer this authority under the auspices of § 2–102(a). *Id.* at 138, 448 A.2d 930. The State's Attorney, moreover, was not entitled to "abrogate his constitutionally prescribed duty by simple acquiescence" in the appointment. *Id.* at 139, 448 A.2d 930.[10]

Prior to its decision in *Babbitt,* the Court of Appeals, in *State v. Ensor and Compton, supra,* held that assistant counsel for the State, appointed pursuant to § 2–102(a) of the Courts and Judicial Proceedings Article, could lawfully

---

**10.** The Court additionally based its holding on the Maryland Rules of Criminal Procedure. Rule 702(d) provided that a charging document could only be filed by the State's Attorney. The charging document, under Rule 702(a) included a criminal information. *Babbitt, supra,* 294 Md. at 137, 448 A.2d 930.

appear before the grand jury. 277 Md. at 548, 356 A.2d 259. The Court expressed concern that:

> In the absence of such a holding and in the absence of a directive to the Attorney General to participate in an investigation [pursuant to Md. Const. Art. V, § 3] *courts* would be without authority to appoint an acting prosecutor or assistant counsel for the grand jury phase of any matter since their authority to appoint under ... Art. 10, § 41 is limited to instances where the appointment is "necessary from the absence, sickness, resignation or death of any State's attorney."

*Id.* (emphasis added).

By empowering the courts to appoint counsel authorized to appear before the grand jury and there exercise powers equivalent to those of a State's Attorney, the Legislature did not deprive the State's Attorney of his power (subject to the limitations of art. 10, § 40) to appoint qualifying special assistants.

We do not believe that such an interpretation renders § 2–102(a) "virtually meaningless," as appellant contends. Both the courts and the State's Attorney, subject to statutorily prescribed limitations, may appoint special counsel to represent the State by appearing before the grand jury and prosecuting persons accused of crime.

If a situation arises in which the State's Attorney has failed to appoint a special assistant in a case in which he and his staff ought not prosecute, section 2–102(a) provides a necessary safeguard by empowering the court to appoint assistant counsel for the State. Or, if a special prosecutor is deemed necessary or appropriate and there are no funds in the State's Attorney's budget to pay for such services, the court may appoint counsel and require the county to pay his or her fee for representing the State.

In summary, the Howard County State's Attorney had the authority to appoint Special Assistant State's Attorneys under art. 10, § 34 of the Md. Ann. Code. Such appointments did not violate the limitations proscribed in art. 10,

§ 40(n)(3) of the Code. Court approval of the appointments was not necessary under § 2–102(a) of the Courts & Judicial Proceedings Article.

## II

Article 35 of the Maryland Declaration of Rights provides in part that "no person shall hold, at the same time, more than one office of profit, created by the Constitution or Laws of this State...." Appellant contends that the appointment of Messrs. Ruter and Penner as Special Assistant State's Attorneys while they occupied positions within the Office of the State Prosecutor violated Article 35's prohibition. We need not determine whether the relevant positions were offices of profit, however. It is well-established under Maryland law that the effect of accepting a second office of profit while already holding one office is simply to vacate the former office. *Moser v. Board of County Commissioners of Howard County*, 235 Md. 279, 284, 201 A.2d 365 (1964); *Hetrich v. County Commissioners of Anne Arundel County*, 222 Md. 304, 308, 159 A.2d 642 (1960); *Truitt v. Collins*, 122 Md. 526, 530, 89 A. 850 (1914). Even assuming *arguendo* the positions involved herein were offices of profit, the effect of Ruter's and Penner's acceptance of appointments as Special Assistant State's Attorneys would only have been to vacate their former offices as Deputy/Assistant State Prosecutors. Their authority to act in the capacity of Special Assistant State's Attorneys would be unaffected. It necessarily follows that any violation of Article 35 resulting from their occupation of two offices of profit would not render the indictment defective.

## III

Appellant's final contention is that Messrs. Ruter and Penner were ineligible for appointment as Special Assistant State's Attorneys in that (1) the appointment was in contravention of art. 10, sec. 33B of the Md. Ann. Code, circumscribing the jurisdiction of the State Prosecutor; (2) the

appointments violated the mandate of art. 10, § 33B(k) that the State Prosecutor and the attorneys on his staff "shall devote full time to their official duties"; and (3) the appointment is violative of art. 10, sec. 33A(a) which states that the "office of State Prosecutor is created as an independent unit within the office of the Attorney General."

At common law, if an officer accepts a second office which is incompatible with the first, he vacates the first. *Hetrich, supra*, 222 Md. at 308, 159 A.2d 642; *Lilly v. Jones*, 158 Md. 260, 265, 148 A. 434 (1930). The courts have qualified the general rule where the individual is *ineligible* to hold the second office. In such a case, the attempted appointment is a nullity and the purported acceptance of the second position illusory. *Hetrich, supra*, 222 Md. at 308, 159 A.2d 642.

Ineligibility generally refers to lack of qualification for an office. In *Kimble v. Bender*, 173 Md. 608, 196 A. 409 (1938), Kimble was appointed Justice of the Peace of Allegany County, an office created while he was a State Senator. The Court held he was ineligible for appointment as a justice in that sec. 17 of Art. III of the Maryland Constitution specified that no senator could "be eligible to any office which shall have been created ... during [the] term" for which he was elected. For reasons of public policy, a member of an appointing body is also "ineligible for appointment to a conflicting office by that body." *Hetrich, supra*, 222 Md. at 309, 159 A.2d 642 (and cases cited therein).

There was no statutory or constitutional provision prohibiting either Ruter or Penner from becoming a member of the Howard County State's Attorney's staff. Nor are we aware of any legislatively prescribed qualifications for the office of Special Assistant State's Attorneys which Messrs. Ruter and Penner failed to fulfill. Finally, we do not believe any considerations of public policy would preclude them from accepting positions as special assistants to the

State's Attorney for Howard County. *Cf. Hetrich, supra,* 222 Md. at 309, 159 A.2d 642.

The most that could be said in favor of appellant's position is that the office of Special Assistant State's Attorney is incompatible with the office of either Deputy or Assistant State Prosecutor.

The courts have not settled on a single test to determine the incompatibility of offices. In *Lilly v. Jones, supra,* the Court of Appeals noted:

One of the most important tests as to whether offices are incompatible is found in the principle that the incompatibility is recognized whenever one is subordinate to the other in some of its important and principal duties, or is subject to supervision by the other, or where a contrariety and antagonism would result in the attempt by one person to discharge the duties of both.

158 Md. at 266, 148 A. 434. The test has additionally been phrased as "whether the two offices are compatible in their natures in the rights, duties or obligations connected with or flowing out of them." *Id.* Another test of incompatibility is the "character and relation of the offices; as where one is subordinate to the other, and subject in some degree to its revisory power; or where the functions of the two offices are inherently inconsistent and repugnant." *Hetrich, supra,* 222 Md. at 308, 159 A.2d 642; *Lilly, supra,* 158 Md. at 266, 148 A. 434.

A logical argument could certainly be made that the offices of Deputy and Assistant State Prosecutor and that of Special Assistant State's Attorney are "inherently inconsistent and repugnant." The State Prosecutor and his staff must operate within the limited jurisdictional framework of art. 10, sec. 33B. As discussed elsewhere in this opinion, the State Prosecutor's authority to prosecute those offenses within his jurisdiction, after the investigation phase had been completed (with certain exceptions immaterial here) is limited under sec. 33B(e) to situations in which the State's Attorney has failed to act. There is obviously an interplay

between the two offices because the State's Attorney is authorized to act on the State Prosecutor's recommendations for action for offenses committed which are within the latter's jurisdiction. Nonetheless, the two offices are *independent* of each other and operate within *distinct* spheres.

Moreover, an individual who is a member of both offices serves not one but two masters and is simultaneously subject to the supervisory control of both the State Prosecutor and the State's Attorney. We can only hypothesize the difficulties which might arise if the two masters had differing concepts respecting the prosecution of a particular cause. We are not suggesting that any such difficulties were apparent in this case; nevertheless, the offices are incompatible because incompatibility is not to be determined by the power actually exercised by the holder of the office but by the power he *may* exercise.

Finally, as appellant has pointed out, members of the State Prosecutor's staff are required under art. 10, sec. 33B(k) to devote full time to their duties. It is difficult to see how one could devote full time to one's duties and obligations to the State Prosecutor when he is otherwise occupied in performing his duties as a Special Assistant State's Attorney, particularly since the duties of the latter office could not be performed by a member of the former office. There was testimony below that Ruter and Penner worked on appellant's case during "regular" and "irregular" hours. Every minute of every "regular" hour spent in prosecuting appellant's case as an assistant to the State's Attorney was time Ruter and Penner were required by art. 10, sec. 33B to be devoting to performing their duties as assistants to the State Prosecutor.

■ Nevertheless, even if we were to hold that the offices were incompatible, it would avail appellant nought. Such holding would not mean that Ruter and Penner could not be appointed Special Assistant State's Attorneys; only that by accepting the appointments they vacated their offices as Deputy and Assistant State Prosecutor. *Hetrich, supra,*

222 Md. at 308, 159 A.2d 642; *Lilly, supra,* 158 Md. at 265, 148 A. 434. We need not decide what the consequences of their vacating their former positions would be; that question is not before us. We need merely conclude, as we do, that although incompatibility between the offices of Deputy or Assistant State Prosecutor and that of Special Assistant State's Attorney might possibly invalidate certain actions taken by them on behalf of the State Prosecutor, it cannot invalidate the indictments in this case.

Since the State's Attorney for Howard County had the authority to appoint Ruter and Penner as Special Assistant State's Attorneys and Ruter and Penner were not prohibited by constitution, statute or common law from accepting the appointments, the indictment against appellant was not defective by reason of the appearance of Ruter and Penner before the grand jury. Accordingly, Judge Wolff properly denied appellant's motion to quash the indictment.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.