*James Andre Reddick, Jr. v. State of Maryland*, Case No. 423, Sept. Term 2023, Opinion filed on October 31, 2024, by Berger, J.

<u>PROSECUTING ATTORNEYS – APPOINTMENT POWERS – COURT APPOINTED SPECIAL PROSECUTORS – CJP § 2-102(a)</u>

Md. Code (1974, 2020 Repl. Vol.) § 2-102(a) of the Courts and Judicial Proceedings Article ("CJP") empowers a trial court to appoint a Special Prosecutor or assistant counsel for the State, if advisable in a specific proceeding. Pursuant to CJP § 2-104, a court-appointed Special Prosecutor is required to take and sign an oath or affirmation prescribed by the Constitution to effectuate the appointment. Special Prosecutors are appointed for specific proceedings and cannot be imbued with all the powers of the State's Attorney.

<u>PROSECUTING ATTORNEYS – APPOINTMENT POWERS – SPECIAL ASSISTANT STATE'S ATTORNEYS – CP § 15-102</u>

The power and duty of the State's Attorney to "prosecute and defend on the part of the State all cases in which the State may be interested," is codified in Md. Code (2001, 2018 Repl. Vol.), § 15-102 of the Criminal Procedure Article ("CP"). From this broad power springs the implicit authority to appoint Special Assistant State's Attorneys to aid in fulfilling that duty. An attorney appointed pursuant to CP § 15-102 is a member of the State's Attorney's staff imbued with all the powers of a State's Attorney. An appointed Special Assistant State's Attorney is subject to the State's Attorney's control and receives all compensation from the State's Attorney. Appointments made pursuant to CP § 15-102 do not require court approval.

<u>PRESERVATION – CONTEMPORANEOUS OBJECTION RULE – MD. RULE 4-323(a)</u>

Md. Rule 4-323(a) sets forth the contemporaneous objection rule that "[a]n objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection became apparent. Otherwise, the objection is waived."

<u>EVIDENCE – AUTHENTICATION OF VIDEO EVIDENCE – SILENT WITNESS THEORY</u>

The silent witness theory of authentication allows the authentication of video evidence by the presentation of evidence describing a process or system that produces an accurate result sufficient to establish its reliability. The silent witness theory does not require personal knowledge of the content of the video evidence or direct participation in its creation.

Circuit Court for Dorchester County
Case No. C-09-CR-20-000109

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 423

September Term, 2023

_____

JAMES ANDRE REDDICK, JR.

v.

STATE OF MARYLAND

_____

Berger,
Nazarian,
Raker, Irma S.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Berger, J.

_____

Filed: October 31, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Following a jury trial in the Circuit Court for Dorchester County, James Andre Reddick, Jr. ("Reddick") was convicted of first-degree murder, conspiracy to commit first-degree murder, use of a firearm in a crime of violence, robbery, conspiracy to commit robbery, and numerous related offenses. He was sentenced to life imprisonment without the possibility of parole, plus life imprisonment plus twenty years. Reddick appeals his conviction and challenges the validity of the appointment of the prosecutor representing the State at trial. He argues that the invalid appointment deprived the circuit court of jurisdiction to hear the case. Reddick also challenges the court's ruling that a surveillance video from a Walmart in Cambridge, Maryland was properly authenticated before it was admitted into evidence. On appeal, Reddick presents two questions for our review, which we rearrange and rephrase as follows:[1]

> I.     Whether the prosecutor was properly appointed to represent the State in this case.
>
> II.    Whether the trial court erred in admitting a surveillance video from the Cambridge Walmart.

For the reasons explained herein, we shall affirm.

---

[1] Reddick phrased his original questions presented as follows:

> 1.    Did the trial court err by admitting into evidence surveillance video that was not properly authenticated by the State?
>
> 2.    Was the prosecution of Mr. Reddick unauthorized because it was conducted almost exclusively by an individual who was appointed but never sworn in as a special prosecutor?

FACTS AND PROCEDURAL HISTORY

Reddick was arrested in Dorchester County for the shooting of Deontae Beltcher. Beltcher had been missing for at least two weeks before his body was discovered in the woods near Horns Point Road in Dorchester County. After Beltcher's mother reported him missing, law enforcement began to gather evidence that pointed to Reddick and his co-defendant as persons of interest. This evidence included cell phone records and surveillance videos from businesses in the surrounding area. In July 2021, the trial court granted Reddick's motion to suppress cellular location data and the State appealed the ruling. In an unreported opinion, this Court reversed the trial court's granting of the motion to suppress the cellular location data and remanded the matter for further proceedings. *See State v. Reddick*, No. 718, Sept. Term, 2021, 2021 WL 6067545 (Md. App. Dec. 22, 2021). Thereafter, the trial took place from January 9, 2023 to January 13, 2023.

## DISCUSSION

**I.      The prosecutor was properly appointed as a Special Assistant State's Attorney, and no oath was required to effectuate his role as prosecutor.**

Reddick argues on appeal that the trial court lacked jurisdiction to hear this case because a Special Prosecutor was improperly appointed to represent the State. On February 9, 2022, the State's Attorney for Dorchester County filed a document titled "State's Petition for Appointment of Special Prosecutor." Within the body of the petition, the State requested an attorney be appointed "to serve as Special Assistant State's Attorney," in part "due to the heightened number of open homicide cases in Dorchester County set for trial in the upcoming months." The petition indicated that "reasonable

2

expenses incurred by this appointment [would] be paid by the Office of the State's Attorney for Dorchester County." The State cited Article 10, Section 34 of the Annotated Code of Maryland ("Art. 10, § 34") as the authority for making this appointment. The Order granting the petition provided that "the interests of justice require the appointment of a Special Prosecutor for the State for any and all offenses that may have been committed by Defendant, James Andre Reddick, Jr. in relation to the above mentioned case, and any other offenses arising from the same incident." The Order granted appointed counsel "all of the authority, power, and discretion given by law to the State's Attorney for Dorchester County as necessary and deemed fit." It further indicated that "costs for the Special Prosecutor appointed for the State will be paid by the Office of the State's Attorney for Dorchester County, Maryland."

During trial, the terms "Special Prosecutor" and "Special Assistant State's Attorney" were used interchangeably by both the trial court and the State. On the first day of trial, the State informed the court, "we do have a Special Prosecutor, but it's not a conflict case, it was just for assistance to my office." Appointed counsel then introduced himself as "appointed Special Assistant State's Attorney for Dorchester County." During his opening statement just moments later, however, appointed counsel told the jury, "I was appointed Special Prosecutor for Dorchester County." On the third day of trial, when announcing a stipulation, the State referred to appointed counsel as "Specially Appointed Prosecutor."

On the final day of trial, defense counsel filed a motion to dismiss on the basis that appointed counsel had not been properly sworn in by the Clerk of the Court. Defense

3

counsel referred to appointed counsel as a Special Prosecutor and directed the court to § 2-102(a) of Md. Code, Courts and Judicial Proceedings ("§ 2-102(a)") for appointment authority and § 2-104 "Oaths or affirmations," ("§ 2-104") in arguing that appointed counsel was required, but failed, to take an oath before serving as a Special Prosecutor. Defense counsel argued that "the Special Prosecutor was never sworn in by the Clerk of the Court in this county to be allowed to prosecute this case." The court denied the motion under Md. Rule 4-252(d)(3), finding that because the issue was triggered by the appointment of counsel, the motion had to be raised before trial to be effective.[2]

On appeal, this issue hinges on how to properly define the role appointed counsel played in this case and under what authority he was appointed. Reddick concludes that appointed counsel was a Special Prosecutor, also known as "assistant counsel for the [S]tate," pursuant to § 2-102(a) of the Courts and Judicial Proceedings Article ("CJP"). Such an appointment comes with specific requirements that Reddick contends were violated, rendering the appointment invalid and stripping the trial court of jurisdiction to hear the case. The State counters that, rather than serving as a Special Prosecutor, appointed counsel served as a Special Assistant State's Attorney, not subject to the appointment requirements embodied in § 2-104. In support of this contention, the State argues that appointed counsel received compensation from the Dorchester County State's Attorney's Office and the Office remained counsel throughout this case. Because

_____

[2] Md. Rule 4-252(d)(3) provides: "Any other defense, objection, or request capable of determination before trial without trial of the general issue, shall be raised by motion filed at any time before trial." Neither party references this rule or the trial court's reliance on it to deny Reddick's motion to dismiss, so we need not address the issue here.

appointed counsel did not act independently from the Dorchester County State's Attorney's Office, the State argues, he was serving as a Special Assistant State's Attorney.

This is not the first time that confusion surrounding the terminology, authorities, and requirements for appointing counsel to represent the State has reached this Court. In *Goldberg v. State*, 69 Md. App. 702 (1987), the State's Attorney for Howard County, fearing a potential conflict of interest in the case to which he was assigned, appointed two attorneys to "present evidence before the grand jury, obtain an indictment, and prosecute" the case. *Goldberg*, 69 Md. App. at 705. In response, the defendant moved to quash the indictment against him, arguing that the appointed attorneys were unauthorized to represent the State before the grand jury because "the State's Attorney lacked authority to appoint special assistants without prior approval by the court[.]" *Id.* The appointed attorneys, the defendant argued, were Special Prosecutors who could only be appointed by the court in specific ways, including the court's power pursuant to § 2-102(a). *Id.* at 713-14.

Section 2-102(a) does grant the courts the power to appoint a Special Prosecutor or assistant counsel for the State "[i]f advisable in a specific proceeding." In *Lykins v. State*, 288 Md. 71 (1980), the Supreme Court of Maryland explored a situation in which such an appointment was appropriate. There, the defendant filed a motion to dismiss when she discovered the prosecutor in her case had previously represented her in her divorce proceedings. *Lykins*, 288 Md. at 73. In that role, he had been privy to personal information that included her relationship with the victim in the current proceedings. *Id.* In an effort to avoid the appearance of a conflict of interest, the trial court granted the motion. *Id.* at 77-78. On appeal, the Court held that rather than dismiss the case, when circumstances

such as these arise that "adversely affect the administration of justice but which in no way suggest the bringing of a prosecution for improper motives[,]" the proper action is to "supplant the prosecutor, not to bar the prosecution." *Id.* at 85. One way of doing so, the Court indicated, is by invoking the court's § 2-102(a) power to appoint assistant counsel for the State. *Id.* at 86.

When a Special Prosecutor is appointed in this way, certain constitutional requirements and limitations apply. Section 2-104(a), for example, requires that he "take and sign the oath or affirmation prescribed by the Constitution." Beyond this requirement, a § 2-102(a)-appointed attorney is appointed only for a "specific proceeding," is compensated by way of court order, operates independently from the State's Attorney's staff, and "cannot be imbued with all the powers of the State's Attorney." *Goldberg*, 69 Md. App. at 715-16. Such limitations exist to prevent trial courts from circumventing "the constitutional and statutory role of the State's Attorney and the Rules of Procedure in criminal causes[.]" *Babbit v. State*, 294 Md. 134, 139 (1982). As the Supreme Court of Maryland explained, "§ 2-102(a) consolidated the power of the courts to appoint personnel when the situation mandates it for the smooth and efficient running of the judicial system. . . . [I]t does not authorize the court to assume the State's Attorney's constitutional power to determine when and if to prosecute[.]" *Babbit*, 294 Md. at 138.

The power and duty of the State's Attorney to "prosecute and defend on the part of the State all cases in which the State may be interested," is codified in § 15-102 of the

Criminal Procedure Article ("CP").[3] From this broad power springs the implicit authority to appoint Special Assistant State's Attorneys to aid in fulfilling that duty. *Goldberg*, 69 Md. App. at 711. Unlike Special Prosecutors appointed by the courts, a Special Assistant State's Attorney "is imbued with all the powers of a State's Attorney[,] . . . is a member of the State's Attorney's staff, subject to the State's Attorney's control, and receives any compensation to which he is entitled from the State's Attorney." *Id.* at 715. By granting the courts § 2-102(a) appointment power "the Legislature did not deprive the State's Attorney of his power . . . to appoint qualifying special assistants." *Id.* at 717. Appointments made in this way do not require court approval and are not subject to the requirements or limitations of § 2-102(a) appointments.

Returning to *Goldberg*, this Court concluded that the defendant in that case was operating under "the erroneous conclusion that an 'assistant counsel for the State' appointed by the court and a Special Assistant State's Attorney appointed by the State's Attorney are equivalent offices." *Id.* at 715. Having differentiated between Special Prosecutors appointed pursuant to § 2-102(a) and Special Assistant State's Attorneys appointed pursuant to then Art. 10, § 34, this Court held that the Howard County State's Attorney had been properly authorized to appoint Special Assistant State's Attorneys under

---

[3] Prior to the 2008 addition of § 15-102, this language was found in Art. 10, § 34, which read: "The State's Attorney for each county and the City of Baltimore shall, in such county or city, prosecute and defend, on the part of the State, all cases in which the State may be interested[.]" Today, § 15-102, which replaced Art. 10, § 34 without substantive changes, provides that "a State's Attorney shall, in the county served by the State's Attorney, prosecute and defend on the part of the State all cases in which the State may be interested."

Art. 10, § 34.[4]  *Id.* at 717-18.  No further court approval or procedures were required to effectuate the appointments and the appointed attorneys were therefore authorized to represent the State before the grand jury.  *Id.*

In the present case, it is evident that appointed counsel was a Special Assistant State's Attorney effectively appointed pursuant to § 15-102.  In form, the appointment does have some characteristics of a § 2-102(a) appointment.  The State's Attorney petitioned the court to approve the appointment and the appointment was memorialized by court order.  The State also used the terms "Special Prosecutor" and "Counsel for the State," within the body of the petition.  Substantively, however, the specifics of the appointment strongly suggest that the State was exercising its § 15-102 authority to appoint a Special Assistant State's Attorney.

The Court finds most persuasive that the State cited Art. 10, § 34 as the authority under which it was seeking the appointment.  Notably, Art. 10, § 34 was repealed and replaced by § 15-102.  Nonetheless, that does not minimize the State's authority to make

---

[4] In *Goldberg*, this Court summarized its findings regarding the two appointments as follows:

> A Special Assistant State's Attorney is imbued with all the powers of the State's Attorney and may institute criminal proceedings, either by way of indictment or information.  He is a member of the State's Attorney's staff, subject to the State's Attorney's control, and receives any compensation to which he is entitled from the State's Attorney.  A Special Prosecutor in the form of assistant counsel for the State, however, is not a member of the State's Attorney's staff and operates independently of it.  The court, not the State's Attorney, determines the amount of compensation to which assistant counsel is entitled.

*Goldberg*, 69 Md. App. at 715-16.

8

such an appointment and reference to it underscores the State's intention. Additionally, the authority granted to appointed counsel is consistent with the broad authority granted to Special Assistant State's Attorneys under § 15-102. As Reddick points out, the court order approving the appointment permits appointed counsel to serve for "any and all offenses that may have been committed . . . in relation to the above mentioned case, and any other offenses arising from the same incident." Such authority, Reddick correctly argues, is inconsistent with that of a court-appointed Special Prosecutor. The order further grants to appointed counsel "all of the authority, power, and discretion given by law to the State's Attorney for Dorchester County as necessary and deemed fit." Similarly, this action suggests that appointed counsel will serve as Special Assistant State's Attorney, a role -- unlike a Special Prosecutor -- that is imbued with this broad authority. Finally, both the Petition and the Order granting the Petition indicate that costs for appointed counsel "will be paid by the Office of the State's Attorney for Dorchester County, Maryland."

Under these facts, we hold that the State's Attorney properly appointed a Special Assistant State's Attorney to aid the office in prosecuting the present case. That the office requested and received court approval does not transform the appointment into a § 2-102(a) court appointment. For all intents and purposes, appointed counsel was a Special Assistant State's Attorney, appointed under the State's Attorney's implicit § 15-102 authority to do so in furtherance of fulfilling its duties to represent the State in criminal proceedings. The oath-taking requirement of § 2-104 was inapplicable to appointed counsel in this proceeding, who was a Special Assistant State's Attorney. Therefore, the appointment was properly executed, and the prosecution of Reddick was in no way unauthorized.

9

## II. The trial court properly admitted the surveillance video into evidence.

Reddick next argues that the trial court erred by admitting into evidence a surveillance video that the State did not properly authenticate. During the investigation into Beltcher's disappearance, the police obtained surveillance videos from several locations, including a Walmart in Cambridge, Maryland, which is the subject of this appeal. The State introduced the video to purportedly show Reddick in the presence of his co-defendant and Beltcher soon before Beltcher's disappearance. To authenticate the video, the State called Brandon Stachowski ("Stachowski"), the asset protection manager at the Cambridge Walmart, to address the surveillance system.

The State began by eliciting testimony from Stachowski that his position at the Cambridge Walmart involved maintaining the surveillance cameras, reviewing the videos when needed, and downloading their content when requested. After confirming that he had reviewed the contents of a CD containing the video in question and that it was consistent with the store's downloading process, the State sought to admit the video into evidence. Before the trial court ruled on the admissibility of the video, defense counsel requested the opportunity to ask Stachowski some questions. During this voir dire examination, Stachowski testified that he had not personally downloaded the video and did not know who had done so. He further testified that, although the CD looked like something that would have come from his store, he had not viewed the original recording, only the copy that was presented. With this, defense counsel stated, "we'd like to object at this time."

Following defense counsel's objection, the State sought to lay additional foundation regarding the authenticity of the video. It did so by eliciting from Stachowski the extent of his experience downloading the store's surveillance videos and the method by which the videos are stored and catalogued. Stachowski testified that, based on his experience, by looking at the distinct file name of the video he could tell not only the date and time that it was recorded but also which camera recorded it and where that camera is located in the store. The State then submitted "that this is now sufficient foundation to admit."

Before the court ruled on admissibility, however, defense counsel requested additional follow-up questions regarding who had access to the cameras and whether the videos could be manipulated by these individuals. Stachowski testified that the asset protection group had access to the videos, but that no one had the ability to alter the videos in any way. Stachowski explained that when a video was requested following an incident, the asset protection employee responsible for downloading it would be able to start the download an hour before and let it run an hour after the incident, but that no editing of any kind was possible.

Finally, before making its ruling, the court asked Stachowski a series of questions regarding the storage and cataloguing of the videos. Stachowski testified that the videos are collected on a server, where they are stored for thirty-five days. He explained that the store maintains internal records regarding videos that are downloaded. After an incident, he testified, the store typically creates two copies of the applicable video, one for the State and one for the store's records. The court concluded with the following exchange:

11

[COURT]: So your authentication of this video is based on the internal components of what you say as far as cameras and --

[WITNESS]: Yes.

[COURT]: -- such? And when there is a video taken, and when you're viewing it and then when it's recorded on your server, or kept on your server, does it have a time date stamp?

[WITNESS]: Yes.

[COURT]: And do you check to see whether or not the time date stamp is accurate with real time?

[WITNESS]: Yes.

[COURT]: And since you've been there, have you had any issues with that?

[WITNESS]: No.

[COURT]: So based on your review of this you could conclude that the CD was taken on a particular time, a particular date, and by a particular camera or cameras?

[WITNESS]: Yes.

[COURT]: All right. So with that understanding, I will allow it. Any of the other issues can go to weight but not admissibility.

[COURT]: And that is your number 40?

[STATE]: 40, Your Honor.

[COURT]: 40 is admitted.

A.    **Reddick's claim of error relating to the admissibility of the video is preserved for appeal.**

As a preliminary matter, the State argues that Reddick did not preserve this issue

for appeal because he did not contemporaneously object to the video's admission.  In

12

support of this contention, the State argues that although Reddick objected to the initial introduction of the evidence, he was required to object each time it was offered. His failure to do so, the State contends, waives this issue for appeal.

Maryland Rule 4-323(a) sets forth the contemporaneous objection rule that "[a]n objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived." We have consistently held that Md. Rule 4-323(a) "also requires the party opposing the admission of evidence to object each time the evidence is offered by its proponent." *Klauenberg v. State*, 355 Md. 528, 545 (1999). Critically, even when a party objects to evidence, and that objection is overruled, the objection is "waived if, at another point during the trial, evidence on the same point is admitted without objection." *DeLeon v. State*, 407 Md. 16, 31 (2008).

Here, the State's contention rests on the notion that the evidence in question was repeatedly introduced and that an additional objection was required of defense counsel each time this occurred. We disagree. The State introduced the evidence and the court ruled on its admissibility only once. The State made its first and only request to introduce the video evidence following its initial questions to the witness, saying, "[y]our Honor, at this time the State would enter State's Exhibit 40 into evidence." After defense counsel questioned the witness regarding his participation in viewing and downloading the video, he lodged his first and only objection to its admissibility.

After laying additional foundation with follow-up questions, the State indicated that it had now presented sufficient foundation for the court to rule on admissibility. Before

13

the court could do so, defense counsel again requested follow-up questions. Finally, the court asked its own line of questions to the witness before ruling that the evidence was admissible. Because there was but one motion to admit the evidence and one court ruling that it was admissible, only one objection from defense counsel was required to preserve this issue for appeal. We, therefore, hold that the issue is properly preserved.

**B. The surveillance video was authenticated under the silent witness theory.**

Reddick argues on appeal that, because Stachowski did not personally download the surveillance video and never viewed the original video saved on the server, the evidence was not sufficiently authenticated. Maryland Rule 5-901(a) sets forth the requirements for authentication and provides that the requirements are satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Md. Rule 5-901(a). The burden carried by the proponent is "slight" as "the court need not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that the jury ultimately might do so." *Dickens v. State*, 175 Md. App. 231, 239 (2007) (quotation marks, citation, and emphasis omitted). When a proponent makes a prima facie showing that a proffered document is genuine, an item "comes in, and the ultimate question of authenticity is left to the jury." *Gerald v. State*, 137 Md. App. 295, 304 (2001) (quotation marks and citation omitted). The Supreme Court of Maryland recently held in *Mooney v. State*, 487 Md. 701 (2024), that the "reasonable juror" test applies to the authentication of video evidence. That is, "for a trial court to admit a video, there must be sufficient evidence for a reasonable juror to find by a preponderance of the

14

evidence that the video is authentic." *Mooney*, 487 Md. at 728. We review a trial court's

decision to admit such evidence for an abuse of discretion. *Gerald*, 137 Md. at 304.

The Supreme Court of Maryland has made clear that videos and still photographs

are both subject to the same general rules on admissibility. *Washington v. State*, 406 Md.

642, 651 (2008). Because photographs and videos are "easily manipulated," courts require

authentication "as a preliminary fact determination, requiring the presentation of evidence

sufficient to show that the evidence sought to be admitted is genuine." *Washington*, 406

Md. at 651-52. One method of authenticating a video is the "[t]estimony of a witness with

knowledge that the offered evidence is what it is claimed to be." Md. Rule 5-901(b)(1);

*see also Washington*, 406 Md. at 652 ("[T]he pictorial testimony theory of authentication

allows photographic evidence to be authenticated through the testimony of a witness with

personal knowledge[.]").

A second method is known as the "silent witness method of authentication."

*Washington*, 406 Md. at 652.[5] This method "allows for authentication by the presentation

of evidence describing a process or system that produces an accurate result." *Id.*

Specifically, a witness can "testif[y] to the type of equipment or camera used, its general

reliability, the quality of the recorded product, the process by which it was focused, or the

---

[5] In *Mooney v. State*, the Supreme Court of Maryland held that the "pictorial testimony" and "silent witness" theories of authentication are not "the exclusive methods for authentication of video footage." 487 Md. at 729. The court held that "[v]ideo footage can be authenticated in different ways under the rules governing authentication, including through the testimony of a witness with knowledge under Maryland Rule 5-901(b)(1), circumstantial evidence under Maryland Rule 5-901(b)(4), or a combination of both[.]" *Id.* at 730.

15

general reliability of the entire system." *Id.* at 653 (citations omitted). The reasoning behind this theory rests on the notion that photographic and video evidence is often more reliable than a human witness and can "be probative in itself." *Dep't of Pub. Safety and Corr. Serv. v. Cole*, 342 Md. 12, 22 (1996) (citation omitted). The video must still be a "reasonably accurate and honest representation . . . of the facts it purports to represent, but a witness with personal knowledge is not required to lay that foundation." *Cole*, 342 Md. at 23 (citation omitted). Whether videos are admissible under the silent witness theory of authentication is fact-specific, and trial judges have discretion in deciding whether counsel has laid a foundation sufficient to satisfy Maryland's evidentiary requirements. *Id.* at 26.

In *Cole*, the Supreme Court of Maryland adopted the "silent witness" theory of authenticating video evidence. *Cole*, 342 Md. at 26. There, a prison warden was called to authenticate a surveillance video showing an incident between a corrections officer and an inmate. *Id.* at 18-19. The warden had not been present at the time of the incident or the video's extraction, but he could speak to the system and process of storing and extracting the video footage. *Id.* He testified that "[o]nce made . . . the tapes are marked with the date and time of the extraction, the names of the inmate and the extraction team members, and are maintained in a vault in the security office[,]" where access to them is controlled. *Id.* The Court found "[n]o issue was raised concerning the accuracy of the video process," nor any "suggestion that the video camera was working improperly or that the tape was altered." *Id.* at 27. It, therefore, held that the videotape was "sufficiently authenticated as a 'silent witness' and was therefore properly admitted into evidence[.]" *Id.*

16

Since then, Maryland courts have relied on the silent witness theory several times to permit the admission of video evidence at trial. In *Jackson v. State*, 460 Md. 107 (2018), for example, the Court found a Bank of America ATM video sufficiently authenticated when a bank employee "described the process he used to access the ATM video footage," and confirmed that he "was not able to modify, cut, paste, or enhance the video in any way." *Jackson*, 460 Md. at 117. Because "[t]he State elicited through [the witness's] testimony the process of reproduction, the reliability of that process, and whether the reproduction was a fair and accurate representation of what the witness had viewed when he submitted a request for the video footage[,]" the video was properly authenticated. *Id.* at 119. Similarly, in *Prince v. State*, 255 Md. App. 640 (2022), this Court determined that video evidence was authenticated by a witness who was one of the caretakers of the surveillance video system but who did not personally download the footage in question. *Prince*, 255 Md. App. at 653. Instead, he had instructed the police on the process of obtaining the video because he was familiar with the system and how to operate it. The Court held that because "the threshold of admissibility is . . . slight," the footage came from a single camera, and "the tape did not undergo any editing before being viewed by the police and used during trial, . . . the State laid a sufficient foundation[.]" *Id.* at 654 (citation omitted).

In contrast, the Court in *Washington v. State*, found that video evidence was not sufficiently authenticated. *Washington,* 406 Md. at 644. There, the State introduced surveillance video taken inside and outside a bar where a shooting had occurred. *Id.* at 646. The owner of the bar testified that "the system was an eight-camera digital video

17

security system, with six cameras inside and two cameras outside the bar[.]" *Id.*  When police requested the tapes, a technician came to the bar and created a "compil[ation] from the various cameras." *Id.*  The witness was not able to explain "how to transfer the data from the surveillance system to portable discs" or how the editing process worked. *Id.* at 655.  He did not know who created the compilation video or how it had been made, nor did he testify to "the process used, the manner of operation of the cameras, the reliability or authenticity of the images, or the chain of custody of the pictures." *Id.*  For these reasons, the Court held that "[t]he State did not lay an adequate foundation to enable the court to find that the videotape and photographs reliably depicted the events leading up to the shooting and its aftermath." *Id.*

As the preceding cases illustrate, the silent witness theory does not require personal knowledge of the content of video evidence or direct participation in its creation, but rather knowledge of the process by which it was created sufficient to establish its reliability. Whether the witness personally downloaded or viewed the video in its original form is not dispositive of its reliability.  Instead, courts have relied on the accuracy of the witness's knowledge of the system of collecting, storing, and downloading the videos, the reliability of that system, and whether the video is likely to have been altered.  When a witness provides testimony addressing these concerns, our courts have found video evidence properly authenticated.

Here, the State laid a sufficient foundation to render the Cambridge Walmart surveillance video admissible under the silent witness theory.  As the asset protection manager at the Cambridge Walmart, Stachowski had extensive knowledge of the video

18

surveillance system, how it operated, and how video footage was collected, stored, and downloaded. He did not personally download the footage or view the video in its original, but he was able to describe the process by which the downloaded copy was created and verify that only a person within his asset protection group had access to do so. Finally, Stachowski testified that the videos could not be manipulated or altered when downloaded and assured the court that the system of time and date stamping was reliable. Under these circumstances, Stachowski's testimony sufficiently authenticated the evidence, and the trial court did not abuse its discretion in admitting it at trial.

## CONCLUSION

For the foregoing reasons, we hold that the prosecutor in this case was properly appointed by the State's Attorney for Dorchester County as a Special Assistant State's Attorney with the authority to represent the State throughout the proceedings. We further hold that the trial court did not abuse its discretion in admitting surveillance video evidence obtained from the Cambridge Walmart under the silent witness theory of authentication. We, therefore, affirm the judgments of the circuit court.

**JUDGMENTS OF THE CIRCUIT COURT FOR DORCHESTER COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

19