545 A.2d 685

UNNAMED ATTORNEY

v.

ATTORNEY GRIEVANCE COMMISSION.

No. 92, Sept. Term, 1986.

Court of Appeals of Maryland.

Aug. 10, 1988.

Michael L. Baum, Los Angeles, Cal. (George G. Misko and Greta C. Van Susteren, on the brief, Washington, D.C., for appellant.

Glenn M. Grossman, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, on the brief), Annapolis, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH,* McAULIFFE and ADKINS, JJ.

COLE, Judge.

In this appeal we shall examine the limits of the Attorney Grievance Commission's (AGC) subpoena power when investigating an attorney's targeted direct mail solicitation practices. Specifically, the unnamed attorney (appellant) asks us to quash the AGC's subpoena compelling him to testify and to produce for inspection, inter alia, "any and all financial journals and ledgers" connected with appellant's law practice.

We summarize the facts. The appellant has been a member of the Maryland Bar since 1972. In early 1983, the AGC received four complaints concerning letters mailed to very recently injured persons informing the latter of the availability of appellant's legal services.[1] In some cases appellant's letter was received as soon as the day after the injury. One of the complainants, a doctor whose patient received appellant's letter, expressed his unsubstantiated concern that the confidentiality of his patient's records had been breached. Assistant Bar Counsel for the AGC notified appellant of these complaints and that his activities were being investigated as possible violations of several Disciplinary Rules of the Code of Professional Responsibility which, at the time of the actions in question, governed the ethical conduct of Maryland attorneys. In addition, appellant was asked to explain the method he used to select recipients for his targeted mailings.

---

* COUCH, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. The seven line "flyers" contained no salutation. They stated that appellant is an attorney in the general practice of law, including representation of those persons having claims because of automobile accidents or injuries caused by others. Recipients were invited to call for a free consultation in order that their claims could be investigated.

Appellant responded that although he was unable to pinpoint the exact source of each recipient's name, possible sources for such information included police records, newspapers, Department of Motor Vehicles records, firefighters, doctors, nurses, paramedics, ambulance personnel, tow truck drivers, friends, neighbors, etc. Appellant offered his assurances to Assistant Bar Counsel that no confidential records had been violated. Furthermore, appellant stated that he would cease mailing his flyers, at least until they were officially approved.

In October, 1983, Bar Counsel informed the appellant that the question of his possible violations of the Code of Professional Responsibility would be referred to an Inquiry Panel. The Inquiry Panel, with one member dissenting, determined that the matter should be dismissed without a hearing. In light of the dissent, Bar Counsel transmitted the Inquiry Panel's recommendations and reports to the Review Board as required by Maryland Rule BV6(d)4(d). The Review Board thereafter remanded the case for a hearing before another Inquiry Panel.

On August 27, 1984, the newly formed Inquiry Panel, which included the lone dissenter from the first Inquiry Panel, served upon the appellant a "Certified Letter in Lieu of Subpoena" pursuant to Rule BV6(d)3(d).[2] The letter, in

---

**2.** Rule BV6(d)3 provides in relevant part as follows:
    (c) Subpoena.
    If in a proceeding before an Inquiry Panel the attendance and testimony of a witness or the production of books, documents or other tangible things is required, the Panel on its own motion, or on motion of the Bar Counsel or the attorney against whom the complaint has been made, shall cause a subpoena to be issued by a clerk pursuant to Rule 2–510. The subpoena may not divulge the name of the attorney against whom the complaint has been made, except to the extent that this requirement is impracticable. The sheriff's return shall be made as directed in the subpoena and the proceedings may not be docketed in court. The Bar Counsel shall maintain dockets and files of all papers filed in the proceedings.
    (d) Certified Letter in Lieu of Subpoena.
    If in a proceeding before an Inquiry Panel the attendance and testimony of or the production of books, documents or other records by any attorney is required, the Panel may command the

substance a subpoena, required the appellant's attendance at a hearing scheduled for September 14, 1984, and demanded the production of various documents.[3]

On September 13, 1984, appellant filed with the Circuit Court for Prince George's County a motion for a protective order to quash the subpoena. The next day appellant appeared at the Inquiry Panel hearing but, upon advice of counsel, refused to answer questions or produce the subpoenaed materials. Consequently, the AGC filed a motion for contempt. Judge James M. Rea of the Circuit Court for Prince George's County presided at a January 3, 1985, hearing on both parties' motions. That court's order, issued January 22, 1985, and entered on the docket the same day, ordered appellant to produce for inspection the following items:

(1) Any and all financial journals and ledgers of the general account of the Respondent's law office;

---

attendance and testimony of or production by that attorney by sending a letter by certified mail to the attorney. If the attorney is admitted to practice law in this State or the letter is delivered to the attorney within this State, the letter shall be as effective against the attorney as if a subpoena had been issued pursuant to paragraph (c) of this subsection.

3. The body of the certified letter stated as follows:
    The undersigned, as Chairman of the Inquiry Panel, hereby notifies you that our Inquiry Panel has scheduled its hearing for Friday, September 14, 1984 at 10:00 a.m., at my office located at 9200 Basil Court, Landover, Maryland 20785, to consider the complaints of Jacqueline Hines, J. F. Hobbs, Joel L. Pitman, and Bar Counsel against you.
    Further, you are advised that this letter serves as a subpoena *duces tecum* pursuant to Rule BV6(d) in that it specifically requires your personal attendance at the date, time, and place of the hearing, and day-to-day thereafter until the completion of said hearing, and it requires that you produce and bring to the hearing all your employee and payroll records, financial journals and ledgers, and all records relating to your escrow, general, payroll and any and all other office accounts including all cancelled checks, copies of deposit slips, bank statements, and check registers from October 1, 1982 through December 31, 1983.

(2) any and all contracts and agreements with advertising agencies, newspapers, printers, publishers and stationery producers and manufacturers;

(3) any and all files of persons as of this date, who have filed formal complaints against the Respondent with the Attorney Grievance Commission.

Ten days after entry of the order, on February 1, 1985, the AGC filed a motion to amend, seeking to persuade the court to compel the appellant to testify at the Inquiry Panel hearing.

On February 4, 1985, appellant filed a notice of appeal to the Court of Special Appeals and a motion to stay the January 22 order pending appeal, which the circuit court granted. Prior to briefing and argument in the intermediate appellate court, this Court issued a writ of certiorari. We ruled that the AGC's motion to amend the January 22 order had rendered the judgment nonfinal and nonappealable. Consequently, we remanded the case to the circuit court for a ruling on the AGC's motion to amend. *Unnamed Atty. v. Griev. Comm'n*, 303 Md. 473, 494 A.2d 940 (1985).

Subsequently, on August 19, 1985, appellant filed in the circuit court a "motion for reconsideration of the January 22, 1985 ruling in light of a recent Supreme Court ruling" (in essence, a motion to alter or amend, according to the appellant). The trial court refused to consider this motion, citing Md.Rule 2–322(e) for the proposition that a court may strike any pleading that is late under the Maryland Rules.

On March 17, 1986, Judge Rea granted the AGC's motion to amend, thereby compelling appellant to appear and answer questions at the Inquiry Panel hearing. Appellant appealed this ruling to the Court of Special Appeals but we granted certiorari prior to consideration of the case by the intermediate appellate court. The trial court stayed its orders of January 22, 1985, and March 17, 1986, pending the outcome of appellate review.

In considering this appeal, we need not determine whether appellant actually committed the ethical transgressions which the AGC is investigating. Rather, our focus must be narrowed to whether the facts of this case justify the AGC's substantial exercise of subpoena power.

An Inquiry Panel may use a subpoena power to aid in the course of investigating possible attorney misconduct. Md.Rule BV6. In order to justify issuance of a subpoena, the Panel need not demonstrate that an ethical violation has in fact occurred. Rather, because an Inquiry Panel's proceedings are investigatory in nature, they "are similar to the proceedings conducted by a grand jury in criminal cases. Their purpose is to aid in determining whether to institute disciplinary action." *Atty. Griev. Comm'n v. Stewart*, 285 Md. 251, 259, 401 A.2d 1026, 1030, *cert. denied*, 444 U.S. 845, 100 S.Ct. 89, 62 L.Ed.2d 58, *reh'g denied*, 444 U.S. 975, 100 S.Ct. 472, 62 L.Ed.2d 391 (1979).

In *Unnamed Physician v. Comm'n*, 285 Md. 1, 400 A.2d 396 (1979), we declined to equate disciplinary proceedings involving members of the legal profession with proceedings before administrative agencies, "recognizing that such proceedings are peculiar to the legal profession the conduct of which is under the supervision of this Court." *Id.* at 9, 400 A.2d at 400. Nevertheless, we recognize that in defining the appropriate boundaries of the AGC's subpoena power, we are guided by the requirement of reasonableness which circumscribes an administrative agency's investigatory powers. We think that, in order to meet the test of reasonableness, an investigation of an individual by an administrative agency may not be based upon mere conjecture or supposition that a violation of law exists. Rather, it is incumbent upon an agency to demonstrate some factual basis to support its concern. In any event, the subpoenaed testimony or documents must appear relevant to the investigation.

We affirmed the soundness of this approach in *Equitable Tr. Co. v. State Comm'n*, 287 Md. 80, 411 A.2d 86 (1980).

In that case we cited *Federal Communications Comm'n v. Cohn*, 154 F.Supp. 899, 908 (S.D.N.Y.1957), wherein the court held:

> ... the subpoena power must at all times be confined to "the rudimentary principles of justice," [footnote omitted] and the courts will plainly refuse to enforce an administrative subpoena which is not within the bounds of reasonableness. [Citations omitted]. There is a delicate balance between the necessity of obtaining information required in the public interest in furtherance of a lawful inquiry, and the onerous burdens which the furnishing of this information may place on these respondents.

Moreover, in *Banach v. St. Comm'n on Human Rel.*, 277 Md. 502, 356 A.2d 242 (1976), we recognized the following factors as among those relevant in determining the validity of an administrative subpoena: "Whether the inquiry is authorized by statute, the information sought is relevant to the inquiry, and the demand is not too indefinite or overbroad." 277 Md. at 506, 356 A.2d at 246, citing *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 208, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946).

In light of the above, it becomes clear that the AGC's investigatory power, while broad, is not without limits. For example, an Inquiry Panel's investigation, or a subpoena issued in furtherance thereof, cannot be justified by the AGC's unsubstantiated suspicion of unethical behavior. Instead, there must exist some factual basis to support the investigation and, furthermore, any subpoenaed testimony or documents must appear relevant and material to the inquiry.

We therefore must first determine whether any of the asserted ethical violations are colorable, i.e., supported by any evidence whatsoever. Second, assuming colorable violations do exist, we must analyze the relevance of the testimony and materials sought by the subpoena to prove the existence of those infractions.

■ The AGC informed appellant that he was under investigation for possible violation of several Disciplinary Rules. The first asserted violation is of DR 2–101 which provides as follows:

DR 2–101   Publicity.

(A) A lawyer, on behalf of himself, his partner, associate, or any other lawyer affiliated with him or his firm, shall not personally, through an advertising group, lawyer referral service, or otherwise, prepare, cause to be prepared, use, or participate in the use of any advertisement or other public communication containing information about the services of lawyers or law firms which:

1. Contains a misstatement of fact;

2. Is likely to mislead or deceive because in context it makes only a partial disclosure of relevant facts;

3. Is intended or is likely to create false or unjustified expectations of favorable results;

4. Contains any other statement that is intended or likely to cause a reasonable person to misunderstand or be deceived; or

5. Constitutes, is part of, or is a device for carrying out, an otherwise unlawful act.

Lawyers, including those participating in an advertising group or lawyer referral service, shall be personally responsible for compliance with the above requirements and shall be prepared to substantiate such compliance to the Attorney Grievance Commission of Maryland.

(B) A lawyer shall not compensate or give anything of value to representatives of the press, radio, television, or other communication medium in anticipation of or in return for professional publicity in a news item.

In essence, DR 2–101 prohibits an attorney's direct or indirect use of any false or misleading advertisement. This rule plainly applies only to communications that are false or deceptive. Whereas appellant's communications to prospective clients were truthful and nondeceptive, we do not view

appellant's activities as plausible violations of DR 2–101. Moreover, the subpoenaed testimony and materials could not establish otherwise.

■ The AGC's investigation next identified as a possible source of discipline DR 2–103(B) which provides that "A lawyer shall not recommend employment . . . of himself . . . to a non-lawyer who has not sought his advice regarding employment of a lawyer." Although we believe that a reasonable argument can be made that appellant's targeted mailings amounted to a recommendation of himself for employment, the United States Supreme Court recently determined that an attorney's direct mail solicitation of potential clients known to face specific legal problems is protected activity under the First Amendment, so long as the communication is neither false nor misleading and does not suffer from overreaching. *Shapero v. Kentucky Bar Association,* — U.S. ——, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988). In *Shapero,* the Supreme Court upheld the right of an attorney to send solicitation letters to potential clients known to be facing foreclosure suits. The Court observed that written forms of solicitation are " 'more conducive to reflection and the exercise of choice on the part of the consumer than is personal solicitation by an attorney.' " (Citation omitted.) — U.S. at ——, 108 S.Ct. at 1923. Consequently, the Court held that "merely because targeted, direct-mail solicitation presents lawyers with opportunities for isolated abuses or mistakes does not justify a total ban on that mode of protected commercial speech." *Id.* Thus, insofar as DR 2–103(B) constitutes a blanket prohibition against targeted direct mail solicitation, it is unconstitutional. As a result, justification of the subpoena cannot rest upon the AGC's suspicion that appellant's targeted mailings constitute a DR 2–103(B) violation.

■ Counsel for the AGC also argued that Rule 7.3 of the new Rules of Professional Conduct would not allow an attorney to forward targeted mail to a person whose state of health would impair the recipient's ability to make a

reasonable judgment.[4]   However, in light of *Shapero*, we note the doubtful constitutional validity of subsection (b)(1) of Rule 7.3, at least to the extent that it proscribes written contact.   In that opinion, the Supreme Court counseled that in determining whether a given solicitation is constitutionally protected, "[t]he relevant inquiry is not whether there exist potential clients whose 'condition' makes them susceptible to undue influence, but whether the *mode of communication* poses a serious danger that lawyers will exploit any such susceptibility." —— U.S. at ——, 108 S.Ct. at 1922.   (Emphasis added).

We interpret *Shapero* to mean that written modes of solicitation (as opposed to in-person solicitation) are protected by the First Amendment, regardless of the recipient's condition, so long as such communication is neither false, misleading, nor overreaching.   We believe that Rule 7.3(b)(1), which improperly focuses solely on the *condition* of the recipient of the solicitation, has questionable validity.

■   Next, the AGC asserts a violation of DR 2–104 which commands that a "lawyer who has given unsolicited advice to a layman that he should obtain counsel or take legal action shall not accept employment resulting from that advice...."   Assuming arguendo that appellant gave such advice, he still did not violate DR 2–104 because the gravamen of that rule is the acceptance of employment resulting from the improper solicitation.   Since it is undisputed that appellant did not accept employment as a result of any of the targeted mailings complained of, there is no colorable violation of DR 2–104 upon which to base the subpoena's issuance.

---

**4.** Rule 7.3(b) provides in pertinent part:
   A lawyer shall not contact, or send a communication to, a prospective client for the purpose of obtaining professional employment if: (1) the lawyer knows or reasonably should know that the physical, emotional or mental state of the person is such that the person could not exercise reasonable judgment in employing a lawyer....

■ As we see it, the subpoena cannot be justified as furthering the investigation of any asserted Disciplinary Rule violation. Nevertheless, the AGC argues that the doctor legitimately complains that his confidential records have been violated because his patient received appellant's letter so soon after the injury. On this basis the AGC maintains the subpoena represents the only means available to determine the method by which appellant targeted his mail. We disagree.

First, the doctor's complaint contained absolutely no evidence tending to demonstrate that his patient's confidential records were violated, much less that appellant or his agent violated them. Furthermore, the fact that the appellant apparently has found an efficient and quick method to obtain the names of injured parties in no way serves as evidence that he has violated anyone's right to privacy. The doctor's bald supposition that the appellant obtained his patient's name by improper means cannot justify the AGC's proposed fishing expedition into appellant's records. We conclude that it is unreasonable to burden the appellant with producing the requested documents or require him to testify at an Inquiry Panel hearing. Consequently, the subpoena must be quashed.

For the above reasons, the judgment of the Circuit Court for Prince George's County is reversed.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. APPELLEE TO PAY THE COSTS.

McAULIFFE, J., concurs in which RODOWSKY, J., concurs.

McAULIFFE, Judge, concurring.

I concur in the result. I am not yet ready to suggest, as does the majority, that every direct written solicitation is protected unless it is false, misleading, or overreaching. I agree that the broad language of the majority opinion in *Shapero v. Kentucky Bar Ass'n*, —— U.S. ——, 108 S.Ct.

1916, 100 L.Ed.2d 475 (1988) supports that conclusion. I understand the holding in *Shapero,* however, to be that a *total ban* on targeted, direct-mail solicitation is not justified by the fact that there may be isolated abuses. 108 S.Ct. at 1923. Rule 7.3(b) of our Rules of Professional Conduct is narrowly drawn to address a specific abuse. I would not be so quick to cast a shroud of constitutional doubt over it.

Judge RODOWSKY has authorized me to state that he concurs with the views expressed herein.