556 A.2d 267

Bernard P. GOLDBERG, Sr.

v.

STATE of Maryland.

No. 43 Sept. Term, 1987.

Court of Appeals of Maryland.

April 12, 1989.

Motion for Reconsideration Denied May 26, 1989.

Lewis S. Nippard, Ellicott City, for appellant.

Ronald M. Levitan, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief) Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ELDRIDGE, Judge.

In 1985, the petitioner, Bernard F. Goldberg, Sr., then a member of the Maryland Bar, was indicted in the Circuit Court for Howard County on five counts of fraudulent misappropriation by a fiduciary, one count of theft over $300.00, and one count of commingling client's funds with

his own.[1]  One of the fraudulent misappropriation counts and the commingling count related to a transaction involving real estate in Frederick County and, *inter alia,* money from the City of Frederick entrusted to Mr. Goldberg.  One of the fraudulent misappropriation counts concerned Mr. Goldberg's conduct as settlement agent for the purchase of real property in Baltimore County.  The remaining counts related to matters occurring solely in Howard County.

Mr. Goldberg filed in the Circuit Court for Howard County a motion to dismiss the indictment on the ground that the appearance of two unauthorized persons before the grand jury rendered the indictment invalid.  The two allegedly unauthorized individuals were the Deputy State Prosecutor and an Assistant State Prosecutor.

The office of the State Prosecutor was initially created by Ch. 255 of the Acts of 1975.  Following the decision in *Murphy v. Yates,* 276 Md. 475, 348 A.2d 837 (1975) (which held the 1975 Act unconstitutional) and the ratification of a constitutional amendment (Ch. 545 of the Acts of 1976), the office of State Prosecutor was re-created pursuant to Ch. 612 of the Acts of 1976, codified in Maryland Code (1957, 1987 Repl.Vol.), Art. 10, § 33A *et seq.*  Under the 1976 statute the State Prosecutor may employ such professional staff as authorized in the State budget (Art. 10, § 33C).  With regard to investigations, Art. 10, § 33B, delineates the authority of the State Prosecutor as follows:

"(b) *Investigations—Offenses enumerated.*—Except with respect to offenses alleged to be committed by himself or members of his staff, he may, on his own initiative, or at the request of the Governor, the Attorney General, the General Assembly, the State Ethics Commission, or a State's Attorney, investigate:

(1) Criminal offenses under the State election laws;

(2) Criminal offenses under the State Public Ethics Law;

---

1. Mr. Goldberg was disbarred by this Court on October 8, 1986. *Attorney Griev. Com'n v. Goldberg,* 307 Md. 546, 515 A.2d 765 (1986).

(3) Violations of the State bribery laws in which an official or employee of the State or of a political subdivision of the State or of any bicounty or multicounty agency of the State was the offeror or offeree, or intended offeror or offeree, of a bribe;

(4) Offenses constituting criminal malfeasance, misfeasance, or nonfeasance in office committed by an officer or employee of the State or of a political subdivision of the State or of any bicounty or multi-county agency of the State. Any person who is advised by the State Prosecutor that he is under investigation may, at his discretion, release this information including any results pertaining to him to the public; and

(5) Violations of the State extortion, perjury, and obstruction of justice laws related to any activity described in subsection (b)(1) through (4).

(c) *Same—Criminal activity in more than one jurisdiction.*—At the request of either the Governor, Attorney General, General Assembly or a State's Attorney, the State Prosecutor may investigate criminal activity conducted or committed partly in this State and partly in another jurisdiction, or which is conducted or committed in more than one political subdivision of the State."

As previously indicated, the basis for Mr. Goldberg's motion to dismiss the indictment in this case was that two members of the State Prosecutor's staff appeared before the grand jury and were allegedly unauthorized to do so. The indictment itself, however, was signed by the State's Attorney for Howard County.

At the hearing on the motion to dismiss the indictment, the following facts were disclosed. When the Howard County State's Attorney's office first learned of the allegations against Mr. Goldberg, that office concluded that the investigation should be referred to the State Prosecutor. This decision was based on three factors: 1. the investigation involved more than one county; 2. Mr. Goldberg was then the Public Defender in Howard County; 3. Mr. Goldberg had once represented the State's Attorney in a

civil case. Thus, Mr. Hymes, the State's Attorney for Howard County, testified as follows:

"A ... I believe at one time I wrote a letter to Mr. Montanarelli [the State Prosecutor] asking for the assistance of his office in conducting the investigation and if, in fact, the investigation resulted in information which would cause one to believe that charges ought to be brought that his office would be appointed Special Assistant State's Attorney for that purpose.

"Q And you realized at that time that ... that his office in its own right did not have jurisdiction in this case did you not?

"A No, I did not. I was under the impression that there was a pretty good possibility that his office did have jurisdiction. If I can elaborate on this because my association with the case is reasonably minimal.

"Q Go ahead.

"A I first became acquainted with this case when a member of Mr. Goldberg's family, his son, came to the office and wanted to give me some information which he wanted me to look into with reference to Mr. Goldberg, Mr. Bernard Goldberg. When his son began the conversation, it was obvious to me that there was going to be some information which would have to be investigated and at that particular point it would probably require the assistance of accountants or auditors or something of that nature. It may be in several jurisdictions, at least more jurisdictions than Howard County. At that particular point, I explained to young Mr. Goldberg that his father was the Public Defender; that as a result of his particular appointment as Public Defender, I in our office had to work with the elder Mr. Goldberg on a daily basis; that no matter what would happen, there would be an appearance of a conflict of interest. As a result of that at least appearance, it was my decision to refer the case to the State Prosecutor's office for assistance in whatever

method may be appropriate as a result of their investigation."

\*  \*  \*  \*  \*  \*

"Q  Okay.  Were there any other reasons why you didn't want to ... want to ... why you didn't want to handle this case?  Did you have a personal relationship with Mr. Goldberg at any time?

"A  Many, many years ago Mr. Goldberg rep ... represented me in a civil matter.

"Q  I see.

"A  And I didn't ... I just didn't think that the public would accept whatever happened as long as I was personally involved in it.  So, I thought that it would be best to have some outside, impartial source look into it.

"Q  But, you signed the indictment in this case.

"A  Yes."

The Deputy State's Attorney for Howard County also testified at the hearing that

"one of the main reasons that we initially referred it to the ... to the office of the State Prosecutor also was the possibility that it might involve more than one jurisdiction.  The nature of the ... of the complaints that we were receiving indicated that it might not be solely Howard County.  So, we asked ... we talked it over on the telephone with the ... the [State] Prosecutor and asked him to investigate the matter."

After the Howard County State's Attorney's office requested that the State Prosecutor handle the investigation, the State Prosecutor agreed and assigned the Deputy State Prosecutor, Gerald R. Ruter, and an Assistant State Prosecutor, Bernard A. Penner, to conduct the investigation. Thereafter, the State's Attorney for Howard County also appointed Mr. Ruter and Mr. Penner as "Special Assistant State's Attorneys for Howard County," and they were administered an oath to this effect by the Clerk of the Circuit Court for Howard County.  At no time were the appointments of Mr. Ruter and Mr. Penner, as Special

Assistant State's Attorneys for Howard County, authorized by the Circuit Court for Howard County, the Howard County Executive, or the Howard County Council. Mr. Ruter and Mr. Penner received no compensation from the State's Attorney's office or from Howard County; their only compensation during the period of the investigation consisted of their salaries from the State Prosecutor's office.

The investigation of the allegations against Mr. Goldberg, and the presentation of evidence to the grand jury, was handled entirely by Mr. Ruter and Mr. Penner. There was no suggestion, however, that they participated in the deliberations of the grand jury. During the relevant period, except for those times when Mr. Ruter and Mr. Penner were presenting evidence to the grand jury or otherwise engaged in the Goldberg investigation, they continued to perform their other duties as Deputy State Prosecutor and Assistant State Prosecutor.

At the conclusion of the evidentiary portion of the hearing on the motion to dismiss, the legal arguments of each side primarily focussed upon whether the State's Attorney of Howard County was authorized to appoint Messrs. Ruter and Penner as Special Assistant State's Attorneys. The State, however, also relied upon Art. 10, § 33B(c), authorizing the State Prosecutor, at the request of, *inter alia*, a State's Attorney, to "investigate criminal activity ... conducted or committed in more than one political subdivision of the State."

The circuit court denied the motion to dismiss, holding that Messrs. Ruter and Penner were authorized to present evidence to the grand jury. The grounds for the circuit court's decision were that the State's Attorney for Howard County was authorized to appoint Special Assistant State's Attorneys without the approval of the circuit court or the Howard County Executive or the County Council, and that no provision of law precluded the appointment of members of the State Prosecutor's staff as Special Assistant State's Attorneys.

Mr. Goldberg waived a jury trial and was tried before the court on a not guilty plea and an agreed statement of facts. He was found guilty on four counts of fraudulent misappropriation by a fiduciary and one count of theft over $300.00. He was sentenced to seven years imprisonment, all but two years being suspended in favor of probation for five years, and restitution was ordered.

On appeal to the Court of Special Appeals, Mr. Goldberg's sole contention was that the trial court erred in denying the motion to dismiss. He contended (1) that the State's Attorney for Howard County lacked the authority to appoint Special Assistant State's Attorneys and (2) that, in any event, members of the State Prosecutor's staff could not be appointed Special Assistant State's Attorneys. The Court of Special Appeals, rejecting these arguments and agreeing with the circuit court, affirmed. *Goldberg v. State,* 69 Md.App. 702, 519 A.2d 779 (1987). Although it held that Mr. Ruter and Mr. Penner were authorized to appear before the grand jury as Special Assistant State's Attorneys, the intermediate appellate court noted that they were not authorized to appear before the grand jury under Art. 10, § 33B(c), as members of the State Prosecutor's staff. 69 Md.App. at 707–708 n. 2, 519 A.2d at 782 n. 2. Thereafter, this Court granted Mr. Goldberg's petition for a writ of certiorari.

■ A motion to dismiss an indictment ordinarily should be granted when an unauthorized person is present before the grand jury during the inquiry leading up to the indictment. *See, e.g., Lykins v. State,* 288 Md. 71, 82–83, 415 A.2d 1113, 1120 (1980); *Bartram v. State,* 280 Md. 616, 626–627, 374 A.2d 1144, 1149 (1977); *State v. Ensor,* 277 Md. 529, 356 A.2d 259 (1976); *Coblentz v. State,* 164 Md. 558, 166 A. 45 (1933). The State offers alternate arguments as to why Messrs. Ruter and Penner were authorized to present evidence to the grand jury. *First,* the State contends that under Art. V, § 9, of the Maryland Constitution, and Code (1957, 1987 Repl.Vol.), Art. 10, §§ 34 and 40(n), the State's Attorney for Howard County is authorized to

appoint Special Assistant State's Attorneys without judicial approval or approval from the Howard County Government. Moreover, the State's argument continues, neither the dual office prohibition in Art. 35 of the Maryland Declaration of Rights nor the State Prosecutor law (Art. 10, § 33A, *et seq.*) precludes the appointment of the State Prosecutor or members of his staff as Special Assistant State's Attorneys. *Second*, the State alternatively argues that Messrs. Ruter and Penner were authorized to appear before the grand jury under the State Prosecutor law, Art. 10, § 33B(c), in their capacities as Deputy State Prosecutor and Assistant State Prosecutor. As previously indicated, the Court of Special Appeals agreed with the State's first argument and rejected the second argument. This Court will affirm on the opposite basis.

■ We shall assume, without deciding, that the State's Attorney for Howard County is authorized generally to appoint Special Assistant State's Attorneys without either judicial approval or approval by the Howard County Government. Nevertheless, in our view, the State Prosecutor law, Art. 10, § 33A, *et seq.*, precludes the appointment of the State Prosecutor or a member of his staff as a Special Assistant State's Attorney with regard to a matter not falling within the State Prosecutor's statutory jurisdiction.

The General Assembly, in Art. 10, §§ 33B(b) and (c), carefully delineated and limited the authority and the role of the State Prosecutor in criminal investigations, even where his participation in a matter was desired by a State's Attorney. Section 33B(b) specifies four categories of criminal offenses which the State prosecutor "may ... investigate," either on his own initiative or at the request of certain designated officials, including a State's Attorney. The allegations against Mr. Goldberg fell within none of the four categories. Section 33B(c) specifies two categories of criminal offenses which the State Prosecutor may investigate upon the request of designated officials, including a

State's Attorney, but may not investigate on his own initiative. These are (1) criminal activity partly within this State and partly outside of Maryland, and (2) criminal activity conducted or committed in more than one political subdivision of this State. By carefully delineating these categories, the General Assembly obviously intended that, if a matter fell outside of subsections (b) or (c), the State Prosecutor may *not* investigate even at the request of a State's Attorney. *See, Office & Prof. Employees Int'l v. MTA*, 295 Md. 88, 96, 453 A.2d 1191 (1982) ("where a statute authorizes or permits a person or agency to take a certain type of action in a particular manner, [the authorization] becomes a mandatory limitation, and the action must be taken in conformity with it"), and cases there cited. In this regard, courts elsewhere have limited prosecuting attorneys to the powers and duties conferred by statute. *See, e.g., Mounts v. State*, 496 N.E.2d 37, 39 (Ind.1986), *People v. Stackpoole*, 144 Mich.App. 291, 300, 375 N.W.2d 419 (1985).

If a State's Attorney and the State Prosecutor could expand the categories set forth in § 33B by the simple expedient of having the State's Attorney's request accompanied by a designation of "Special Assistant State's Attorney," it would render meaningless the General Assembly's purpose of limiting the State Prosecutor's jurisdiction to specified categories of offenses. If this circumvention of the statutory limitations were permitted, the State Prosecutor, as "Special Assistant State's Attorney," could investigate any offense within the domain of the State's Attorney, which extends to "all cases in which the State may be interested." Art. 10, § 34. This would render the General Assembly's restiction upon the State Prosecutor's role a sham.

Moreover, a difference between a rejected draft of the State Prosecutor law and the present statute reinforces our conclusion that neither the State Prosecutor nor his assistants may be appointed as Special Assistant State's Attor-

neys. As initially proposed, the earlier State Prosecutor Act contained alternative versions of the Act. *See Murphy v. Yates, supra,* 276 Md. at 476 n. 2, 348 A.2d at 838 n. 2. The version that was not passed included a provision permitting the State Prosecutor to assist a State's Attorney upon request. *See* § 33B(E) of Ch. 255 of the Acts of 1975 (alternative version). Neither the adopted version nor the present act contains an equivalent provision. The General Assembly, therefore, clearly considered and rejected allowing the State Prosecutor to assist a State's Attorney whenever the State's Attorney desired such assistance.

■ Although Mr. Ruter and Mr. Penner were not authorized to appear before the grand jury simply because of the State's Attorney's designation, they were authorized to appear, as Deputy State Prosecutor and Assistant State Prosecutor, under § 33B(c) of the State Prosecutor law. As previously discussed, that section authorizes the State Prosecutor, upon the request of a State's Attorney, to investigate criminal activity conducted in more than one county of this State. It is undisputed that the State's Attorney of Howard County requested the State Prosecutor to investigate the allegations against Mr. Goldberg and that one of the grounds for the request was the State's Attorney's reasonable belief that the criminal activity was conducted in more than one county. Certainly, this is all that was required under § 33B(c).[2] Moreover, the grand jury confirmed the reasonableness of the State's Attorney's belief, as it indicted Mr. Goldberg for criminal activity conducted in more than one subdivision. The reasonableness of the State's Attorney's belief was further confirmed by the trial,

---

**2.** Obviously, § 33B(c) does not require, before an *investigation* by the State Prosecutor is requested, that it be conclusively established that criminal activity occurred in more than one subdivision. If the State's Attorney already had such proof, the investigation would hardly be necessary. The purpose of an investigation is to explore and gather evidence.

where the agreed statement of facts demonstrated criminal activity in Frederick County, and the verdict that Mr. Goldberg was guilty of criminal activity in Frederick County.[3]

The Court of Special Appeals did not question that criminal activity took place in more than one subdivision within the meaning of § 33B(c). Rather, the intermediate appellate court stated: "The State Prosecutor may have had the authority to conduct the initial investigation in this matter based on a belief that the offenses committed by appellant were multi-jurisdictional in nature. However, neither he nor his assistant had the authority to go before the grand jury, that is, to commence prosecution." *Goldberg v. State, supra,* 69 Md.App. at 708 n. 2, 519 A.2d at 782 n. 2. Apparently the Court of Special Appeals was of the view that the "investigation" contemplated by § 33B(c) was preliminary to grand jury proceedings and did not include the presentation of evidence in front of the grand jury. We disagree. The grand jury process is an integral part of criminal investigation. As Judge W. Mitchell Digges stated for the Court in *In re Report of Grand Jury,* 152 Md. 616, 622, 137 A. 370 (1927):

"While it is true that the grand jury has and should have the fullest inquisitorial power, yet in the exercise of

---

3. The evidence showed, and Mr. Goldberg was convicted of, among other things, fraudulent misappropriation of funds generated by the sale of land in Frederick County to the City of Frederick by a resident of Florida. Fraudulent misappropriation of funds by a fiduciary is a form of embezzlement. *See* Code 1957 (1987 Repl.Vol.), Art. 27, § 132. Embezzlement may be committed in several places at several times. *McBurney v. State,* 280 Md. 21, 30, 371 A.2d 129 (1977). As a result, we stated in *Martel v. State,* 221 Md. 294, 299, 157 A.2d 437, *cert. denied,* 363 U.S. 849, 80 S.Ct. 1628, 4 L.Ed.2d 1732 (1960), that for embezzlement venue lies:

"where the act of appropriation or conversion took place, or where the intent to embezzle was formed, or where the property was entrusted, or where the accused is under an obligation to account." *See also McBurney v. State, supra,* 280 Md. at 30, 371 A.2d at 134; *Urciolo v. State,* 272 Md. 607, 617, 325 A.2d 878 (1974); *Peddersen v. State,* 223 Md. 329, 337, 164 A.2d 539 (1960).

such power *they are confined to an investigation of violations* of the criminal law...." (Emphasis added). And later (152 Md. at 623, 137 A. at 372–373):

> "At common law the function of the grand jury is confined to *investigations* of violations of the criminal law, and unless such *investigations* disclose facts which would constitute a recognized violation of the criminal law, they have no power or authority to criticize any particular individual or number of individuals. If the evidence obtained *through their investigations* warrants a presentment or indictment, under the law and the oath which they are required to take, they are bound to present or indict, and if in their judgment it falls short of showing the commission of a criminal offense, they are bound to refrain from making public the results of their investigation." (Emphasis added).

*See also, e.g., Unnamed Attorney v. Attorney Griev.*, 313 Md. 357, 364, 545 A.2d 685 (1988); *In re Special Investigation No. 281*, 299 Md. 181, 191, 473 A.2d 1 (1984); *In re Special Investigation No. 244*, 296 Md. 80, 92, 459 A.2d 1111 (1983); *In re Special Investigation No. 236*, 295 Md. 573, 578–579, 458 A.2d 75 (1983); *Bartram v. State, supra*, 280 Md. at 633, 374 A.2d at 1152.

Furthermore, the General Assembly directly authorized the State Prosecutor to appear before the grand jury in connection with investigations under §§ 33B(b) and (c). Section 33B(g) specifically states:

> "(g) *Powers and duties of State's Attorney.*—In the investigation of any case as provided in subsection (b) or (c), and the prosecution of any case as provided in subsection (e), the State Prosecutor has all the powers and duties of a State's Attorney, including the use of the grand jury in any county or Baltimore City."

The authorization of the State Prosecutor's office to investigate criminal conduct believed to have been committed in more than one subdivision clearly included the authorization to appear before the grand jury.

**666**

In this Court the petitioner Goldberg does not dispute that Messrs. Ruter and Penner were authorized to appear before the grand jury under Art. 10, § 33B(c). Rather, he asserts that the State may not now rely upon § 33B(c) because, in the trial court, the State relied upon the designation of Messrs. Ruter and Penner as Special Assistant State's Attorneys. We need not in this case decide what the effect would have been if the State, as a matter of fact and law, had in the trial court unequivocally abandoned any reliance on the attorneys' role as members of the State Prosecutor's staff. Instead, as earlier pointed out, the State at the hearing on the motion to dismiss, both in the presentation of testimony and in argument, alternatively relied on § 33B(c) of the State Prosecutor's law. Mr. Goldberg was in no way prejudiced.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.